**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JULIO SEVILLANO,

        Plaintiff,

v.                                                          Case No: 6:19-cv-1461-WWB-DCI

ORANGE COUNTY, FLORIDA,

        Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendant's Amended Dispositive Motion for Final Summary Judgment (Doc. 60), Plaintiff's Response (Doc. 73), and Defendant's Reply (Doc. 74). For the reasons set forth below, Defendant's Motion will be granted.

## I.    BACKGROUND

Plaintiff, Julio Sevillano, began working for Defendant, Orange County, Florida, as a part-time head start bus driver in 1989 and became a full-time employee in 1991. (Doc. 61 at 18:12–21, 19:7–13). In addition to driving students and senior citizens on his bus, Plaintiff's duties also included delivering furniture to various head start locations in Orange County and acting as a teacher's assistant and janitor. (*Id.* at 24:9–19). In 2013, Defendant informed Plaintiff and the other head start bus drivers that their positions were being eliminated effective January 31, 2014. (Doc. 64 at 2). As a result, Plaintiff filed several applications for open equipment operator positions with Defendant. (*Id.* at 2–3). Plaintiff was not awarded those positions and Defendant placed him in an open position as a park specialist to begin following the termination of his bus driving position. (*Id.* at 4, 18).

On January 17, 2014, Plaintiff was injured while working for Defendant, which ultimately required him to have surgery to repair an umbilical hernia. (Doc. 61 at 27:17–18, 28:2–6, 28:22–29:9). Plaintiff testified that his doctor recommended that he remain out of work for six weeks following the surgery. (*Id.* at 35:21–36:8). On January 31, 2014, he informed Defendant that he could not return to work until March 1, 2014, at which time he was not permitted to engage in any lifting, carrying, pushing, or pulling of more than twenty pounds. (Doc. 64 at 4). However, Defendant had been informed by its worker's compensation company that Plaintiff had been cleared to return to work on light duty on February 3, 2014, and full duty on March 1, 2014, which was confirmed by Plaintiff's physician's office. (Doc. 64 at 4, 17, 20). As a result, Defendant sent Plaintiff a letter informing him that he needed to report for work at his new position on February 11, 2014. (*Id.* at 5, 18). Plaintiff did not report to his new position and was terminated on February 14, 2014. (*Id.* at 6). As of December 3, 2015, Plaintiff's physician opined that Plaintiff had reach maximum medical improvement with regard to his umbilical hernia and did not have any functional capacity limitations. (Doc. 63-5 at 8).

After Plaintiff disputed his termination with the Department of Labor, Defendant agreed to reinstate his employment in the new position of equipment operator effective June 2, 2014, and to pay him back wages from the date of his termination. (Doc. 65 at 2, 6). Plaintiff reported to work but informed his supervisor that he was unable to perform the physical duties of the position. (*Id.* at 3, 9, 16). Defendant asked Plaintiff to substantiate his medical limitations and Plaintiff provided Defendant a letter on June 6, 2014, in which he stated that he suffers from a "back/hernia injury" stemming from the January 17, 2014 incident making it difficult for him to lift up to eighty pounds, cut trees,

stand in deep ditches, and otherwise "perform as expected." (Doc. 12-2 at 1; Doc. 66 at 4). On June 4, 2014, Plaintiff was injured in the equipment operator position and placed on modified light duty by Dr. Barry Portnoy. (Doc. 66 at 21–22). As a result, Defendant placed Plaintiff on medical leave at his request. (*Id.* at 5–6). On July 23, 2014, Plaintiff was released without restriction to return to work, which was confirmed by a second doctor on September 15, 2014. (*Id.* at 28, 30). Nevertheless, Plaintiff did not return to work in the equipment operator position. (*Id.* at 10).

In light of Plaintiff's stated inability to perform the equipment operator position, Defendant scheduled a pre-determination hearing to determine if Plaintiff should be medically separated from his employment with Orange County. (*Id.* at 9). At the hearing, Plaintiff's counsel informed Defendant that Plaintiff had work restrictions and required accommodations, including additional time to locate a suitable position with Orange County. (*Id.* at 9). Plaintiff's request was granted, and his leave was extended an additional thirty days to allow him to participate in Orange County's disability hiring process to find an acceptable alternative position. (*Id.* at 31). Plaintiff applied for several jobs during this period but was not qualified for most of the positions. (*Id.* at 33). Plaintiff was granted an interview for a position as a park specialist, but he was not selected for the position. (*Id.*). As a result, Plaintiff was terminated on November 21, 2014. (*Id.*).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") on December 11, 2014. (Doc. 63-1 at 1). The Department of Justice ("**DOJ**") issued a right to sue notice via certified mail to Plaintiff's address on March 6, 2019. (Doc. 63-3 at 1). The United States Postal Service attempted to deliver the letter on March 11, 2019, but no one was available to sign for its receipt and a notice

of its attempted delivery was left at Plaintiff's address. (Doc. 60-3 at 2; Doc. 63-3 at 1–2). When the letter remained unclaimed, the Post Office returned the letter to DOJ. (Doc. 60-3 at 2; Doc. 63-3 at 3). Plaintiff testified that he never received the attempted delivery notice or the March 6, 2019 letter. (Doc. 63 at 258:20–25, 259:13–22, 260: 6–12). Accordingly, on June 4, 2019, DOJ issued a second right to sue notice. (*Id.* at 260:13–17; Doc. 63-4 at 1–2). Thereafter, Plaintiff filed this case on August 7, 2019, alleging one count for discrimination in violation of the Americans with Disabilities Act ("**ADA**"), 42 U.S.C. § 12111 *et seq.* (*See generally* Doc. Nos. 1, 12).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III.   DISCUSSION

Defendant argues that Plaintiff's claim is time-barred, or in the alternative, Plaintiff has failed to establish a prima facie case of disability discrimination.

### A.   Timeliness

Defendant argues that Plaintiff's claim is time-barred under the ADA. As set forth more fully above, the first right to sue notice was issued on March 6, 2019, and a second notice was issued on June 4, 2019. If, as Defendant argues, the time runs from the date of attempted delivery of the first notice, Plaintiff's claim is barred. If, however, the time runs from the date that Plaintiff actually received the second notice, Plaintiff's claim was timely filed with this Court.

A plaintiff alleging claims under the ADA, "must bring suit within 90 days of receiving a right-to-sue letter from the EEOC." *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011) (citing 42 U.S.C. §§ 2000e-5(f)(1); 12117(a)). "Dismissal is appropriate when the plaintiff fails to file h[is] lawsuit within 90 days of receiving a right-to-sue letter, unless []he shows that the delay was through no fault of h[is] own." *Id.* (citation omitted). Whether a plaintiff has been notified by the EEOC within the meaning of the statute is determined "on a case-by-case basis to fashion a fair and reasonable

rule for the circumstances of each case." *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1341 (11th Cir. 1999). While the complaining party must assume some minimum level of responsibility in ensuring receipt of the notice from the EEOC, the plaintiff's rights cannot be conditioned "on fortuitous circumstances or events beyond his control which are not spelled out in the statute." *Id.* at 1340 (quotation omitted). "Once a defendant raises the issue of timeliness, the plaintiff has the burden of demonstrating that the filing was timely." *Guyette v. Charter Commc'ns, Inc.*, 403 F. Supp. 3d 1349, 1361 (N.D. Ga. 2019) (citation omitted).

Although Plaintiff has unequivocally testified that he did not receive the notice of attempted delivery with respect to the first letter, this alone is not sufficient to defeat summary judgment. In *Kerr v. McDonald's Corp.*, the Eleventh Circuit held that the complaining party "failed to assume the minimal responsibility or to put forth the minimal effort necessary to resolve their claims" where she had "actual knowledge . . . that the EEOC has terminated its investigation of her claim" and failed to make timely inquiry regarding the missing or late notices. 427 F.3d 947, 953–54 (11th Cir. 2005); *see also Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 868–69 (11th Cir. 2020); *Singleton v. Garden City, Ga.*, No. 4:19-cv-106, 2021 WL 765674, at *5 (S.D. Ga. Feb. 26, 2021); *Waring v. Miami-Dade Cnty.*, 172 F. Supp. 3d 1343, 1347 (S.D. Fla. 2016). Here, Plaintiff relies on the date he received the second notice to make his Complaint timely, but the undisputed testimony is that Plaintiff was on notice that a letter was being sent by certified mail at the end of February or early March 2019. (Doc. 63 at 255:8–256:22; Doc. 63-2 at 1). When the letter did not arrive, at some unspecified time thereafter, Plaintiff contacted the EEOC and was informed that the first notice had been issued. (Doc. 63 at 256:23–

257:4). Despite this, he has not presented evidence that he contacted the EEOC regarding the missing letter in a timely manner and, even after calling them, he still continued to wait for a new request to be made to the DOJ and new notice to be issued after the individual at DOJ returned from vacation. (*Id.* at 257:5–16). Then, once that second notice was issued, Plaintiff waited over two months to file suit. Plaintiff has not directed this Court to any evidence that his failure to timely receive notice or file suit was due to circumstances beyond his control or that he was without fault, and therefore, Defendant's Motion will be granted.

### B.     Disability Discrimination

Even if Plaintiff's Complaint had been timely filed, Defendant would still be entitled to summary judgment on Plaintiff's discrimination claim. In his Amended Complaint (Doc. 12), Plaintiff alleges that Defendant violated the ADA by failing to "reallocate or redistribute marginal job functions and/or eliminate nonessential tasks" of the equipment operator position and failing to reassign Plaintiff to the park specialist position for which he interviewed.[1] (*Id.* ¶ 33). "To establish a *prima facie* case of disability discrimination under Title I of the ADA, a plaintiff must prove that []he: (1) was disabled within the meaning of the Act; (2) was otherwise a qualified individual for the position; and (3) was

---

[1] Plaintiff also alleges that Defendant violated the ADA by assigning him to the equipment operator position and failing to engage in the interactive process upon Plaintiff's return to work. In his Response, however, Plaintiff only argues that Defendant is liable for failing to make reasonable accommodations in the equipment operator position or by failing to reassign him to an open park specialist or similar position. Accordingly, the other bases alleged have been abandoned and will not be addressed. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

subjected to unlawful discrimination because of h[is] disability." *Scott v. Postmaster Gen. U.S. Postal Serv.*, 818 F. App'x 914, 916–17 (11th Cir. 2020).

Plaintiff has presented evidence that since at least 2008, he had a permanent restriction of "lifting [no] more than 25 pounds, occasional bending, twisting, squatting, stooping, [and] climbing." (Doc. 73-1 at 10–16). Furthermore, Plaintiff has adamantly stated that he informed Defendant of his restrictions and provided it with documentation. Thus, this Court will assume for purposes of this Order that Plaintiff has adequately shown that he was disabled, and that Defendant was aware of his disability. Nevertheless, Plaintiff has not shown that he was qualified for any identified position with Defendant.

"To show that he is a qualified individual, a plaintiff must show that he can perform the essential functions of his position with or without reasonable accommodations." *Williams v. Revco Disc. Drug Ctrs., Inc.*, 552 F. App'x 919, 921 (11th Cir. 2014). "An accommodation is 'reasonable' and necessary under the ADA, in turn, only if it enables the employee to perform the essential functions of the job." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007) (quotation omitted). "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job." *Id.* (quotation omitted). "The 'essential functions' of a position 'are the fundamental job duties of a position that an individual with a disability is actually required to perform.'" *Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804, 809 (11th Cir. 2020) (quoting *Holly*, 492 F.3d at 1257). "Whether a function of a position is essential is evaluated on a case-by-case basis by examining a number of factors, including the employer's judgment

of what it believes to be the essential functions, any written description of the position, the amount of time spent on the job performing the function, and the consequences of not requiring the employee to perform the function." *Williams*, 552 F. App'x at 921 (citation omitted).

In his Response, Plaintiff makes the conclusory argument that he was qualified for the park specialist position because Defendant granted him an interview for that position, and he was not informed that he was not qualified. Plaintiff fails to cite any authority for the proposition that this is sufficient to meet the legal definition of qualified individual. Taking the record evidence in the light most favorable to Plaintiff, he was not a qualified individual with respect to the park specialist position. Defendant has presented evidence that the ability to lift over forty-five pounds on a frequent basis is an essential function of the job, as well as frequent bending, stooping, and climbing. (Doc. 68 at 6). Plaintiff has presented no argument or evidence upon which a reasonable jury could determine that these are not essential to the park specialist position. Nevertheless, Plaintiff's own undisputed evidence shows that he is unable, even with a reasonable accommodation, to perform those tasks and he is permanently restricted from doing so. Thus, he was not a qualified individual with respect to the park specialist position.

Plaintiff also argues that he was qualified for an unspecified bus driver position but fails to cite any record evidence that such a position existed or was vacant. As the Eleventh Circuit has repeatedly held, the ADA does not require an employer to create a position or to place an employee in a position that is not vacant. *See, e.g.*, *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017); *Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015). Furthermore, "the issue of whether an employee is an otherwise qualified

individual and whether a reasonable accommodation can be made for that employee is determined by reference to a specific position." *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224–25 (11th Cir. 1997). Thus, Plaintiff's broad, unsupported statement that some position existed with Orange County that he could have performed is not sufficient. Because Plaintiff has not shown any evidence that he was a qualified individual with respect to any available, existing position with Defendant, he has not met his burden of establishing a prima facie case of discrimination and Defendant is also entitled to summary judgment on the merits of Plaintiff's claim. *See Barneman v. Int'l Longshoreman Assoc. Local 1423*, 840 F. App'x 468, 478 (11th Cir. 2021); *Byrd v. UPS*, 814 F. App'x 536, 539–40 (11th Cir. 2020).

IV.    **CONCLUSION**

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that the Amended Dispositive Motion for Final Summary Judgment (Doc. 60) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on his claim against Defendant. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on May 26, 2021.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record